Case 2:13-bk-28497-RK    Doc 170    Filed 03/06/15    Entered 03/06/15 15:39:12    Desc
Main Document    Page 1 of 14

FILED & ENTERED

MAR 06 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br>**CORONA CARE CONVALESCENT CORPORATION,**<br>Debtor.<br>In re:<br>**CORONA CARE RETIREMENT, INC.**,<br>Debtor. | Case No. 2:13-bk-28497-RK<br><br>Jointly Administered with Case No. 2:13-bk-28519-RK<br><br>Chapter 11<br><br>**MEMORANDUM DECISION ON: (1) MOTION OF UNITED STATES TRUSTEE UNDER 11 U.S.C. § 1112(b)(1) TO CONVERT, DISMISS OR APPOINT A CHAPTER 11 TRUSTEE; AND (2) MOTION OF CREDITORS' COMMITTEE TO APPOINT A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a)** |

Pending before the court in the jointly administered cases of bankruptcy debtors Corona Care Convalescent Corporation and Corona Care Retirement, Inc. are: (1) the Motion of the United States Trustee under 11 U.S.C. §1112(b)(1) to Convert, Dismiss, or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees ("UST Motion"), ECF 35; and (2) the Emergency Motion of Official Committee of Unsecured Creditors to Appoint a Chapter 11 Trustee ("Committee Motion"), 2:13-bk-28484, ECF

132.[1]  These motions were filed in the jointly administered cases in the lead bankruptcy case of bankruptcy debtor, Pasadena Adult Residential Care, Inc., which case has now been dismissed.  The hearings on these motions, originally filed in 2013, have been continued from time to time, mostly by consent of the parties, to allow time for the parties to negotiate a consensual resolution of their various disputes leading to a confirmable plan of reorganization.

The parties had reached a settlement between the debtors, their insiders, Felicidad and Renato Ferrer, the creditors' committee, and creditor HCF Insurance Agency, which was memorialized in a stipulation and order in the jointly administered cases formally entered in the lead bankruptcy case of Pasadena Adult Residential Care, Inc., which resulted in the dismissal of the four Pasadena facility bankruptcy cases and the continuation of the two Corona facility cases.  However, the parties are unable to consummate the settlement, as the remaining debtors, Corona Care Convalescent Corporation and Corona Care Retirement, Inc., have defaulted on settlement provisions requiring them to file and obtain confirmation of reorganization plans by certain dates.  Although the parties have attempted to salvage their settlement in further negotiations, the parties are unable to reconcile their differences, and the moving parties are pressing the instant motions.  The court conducted further hearings on the motions on March 3 and 5, 2015.  Appearances were made as noted on the record.

In light of these subsequent developments, there have been some changes in the litigation positions of the parties.  In the UST Motion, the United States Trustee originally recommended dismissal of the bankruptcy cases, but now recommends appointment of a Chapter 11 trustee.  The Creditors' Committee has not changed its position in support of its motion that a trustee should be appointed and concurs with the United States Trustee's current position recommending this.  Debtors originally filed an opposition to

---

[1] Because these cases were jointly administered, there is the possibility of some confusion over reference to docket entries. Any reference to a docket entry in this decision refers to case number 2:13-bk-28497-RK, as the lead case in the remaining bankruptcy cases, unless otherwise noted.

2

1 the UST Motion, but now take the position that the motion to dismiss the cases should be
2 granted. *Debtors' Response to the United States Trustee's Motion Under 11 U.S.C. §*
3 *1112(b)(1) to Convert, Dismiss, or Appoint a Chapter 11 Trustee*, ECF 163. This position
4 is supported by the debtors' shareholder insiders, the Ferrers, Vision West, LLC, and
5 Antony and Prema Thekkeks.[2]  Some creditors support the motions recommending
6 appointment of a trustee, including HCF and the United States of America on behalf of its
7 agency, the Internal Revenue Service ("IRS").  The IRS filed a proof of claim for
8 prepetition taxes totaling $2,788,325.95 (of which $1,927,172.34 is claimed as priority
9 unsecured), and the United States on behalf of the IRS filed a joinder in the UST motion
10 that the cases be dismissed, but stated at the hearing on March 5, 2015 that it concurred
11 in the United States Trustee's recommendation that a trustee be appointed. *Joinder of*
12 *the United States of America, on behalf of its agency, the Internal Revenue Service, in*
13 *the United States Trustee's Motion to Convert or Dismiss.*  ECF 138.  Representatives of
14 other creditors, including Clinishare Pharmacy, Inc., Shred Pro, LLC, Office Smart, LLC,
15 Intellex Enterprises, Vital Rehab Services, Inc., Verdugo Plaza Pharmacy, Inc.,
16 Respiratory Medical Services, Rodolfo E. Magsino, M.D., Inc., filed declarations stating
17 that these parties oppose appointment of a trustee and instead support the motions for
18 dismissal, as urged by debtors.  ECF 163.
19 　　　　Other interested parties have also expressed their positions on the motions.
20 Corona-Cal Associates, LP, the landlord of the premises on which debtors conduct their
21 business operations, filed a declaration of its representative stating that the landlord
22 supports appointment of a trustee and will not execute further extensions for the debtors
23 to assume or reject debtors' leases unless there is a Chapter 11 trustee in place.  ECF

---

[2]  A dispute over ownership of 49% equity interests in debtors exists between Vision West, LLC, and its principals, Bobby Singh and AJ Rana, on one hand, and the Thekkeks on the other.  The court does not resolve this particular dispute with respect to the pending motions, and need not resolve such dispute at this time.

3

157. Joseph Rodrigues, the Patient Care Ombudsman appointed in these cases, filed a declaration stating that he supports the appointment of a trustee. ECF 158.

At the conclusion of the hearing on the motions on March 5, 2015, the court set a further hearing for March 6, 2015 at 3:30 p.m. to announce a ruling on the motions. The court now takes the motions under submission, issues this memorandum decision as its ruling and vacates the further hearing as unnecessary in light of this written ruling. For the reasons stated herein, the court grants the UST Motion under 11 U.S.C. § 1112(b)(1) and authorizes and directs the United States Trustee to appoint a Chapter 11 trustee for these cases. Because the Committee Motion seeks the same relief of trustee appointment under a different statute, 11 U.S.C. § 1104(a), the court need not rule upon such motion since the relief sought is granted on the other motion.

The UST Motion is based on 11 U.S.C. § 1112(b)(1), which provides in pertinent part: ". . . after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." The party seeking dismissal under 11 U.S.C. § 1112(b)(1) has the burden of proving cause by a preponderance of the evidence. *See* 7 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 1112.04[4] at 1112-22 (16th ed. 2014), *citing In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Citi-Toledo Partners,* 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (*citing Grogan v. Garner*, 498 U.S. 279, 286 (1991).

Here, the court finds that the United States Trustee has demonstrated cause under 11 U.S.C. § 1112(b)(1) as described in § 1112(b)(4)(A), specifically, substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. At the hearing on March 5, 2015, the United States Trustee described the dire financial straits that Debtors face currently in these cases. Debtors' financial condition has not improved, even though these cases have been pending since July 22,

4

1  2013, over 19 months, which is documented in the debtors' bankruptcy schedules filed in
2  August 2013 and their recent monthly operating reports submitted with the United States
3  Trustee's requests for judicial notice. ECF 154. As shown by its January 2015 monthly
4  operating report, debtor Corona Convalescent Corporation has shown cumulative
5  postpetition losses of $161,870.47, and its general bank account and the payroll account
6  are overdrawn by $39,321.91 and $16,595.49 respectively. ECF 154 at 88 and 92. As
7  shown by its January 2015 monthly operating report, the finances of debtor Corona Care
8  Retirement, Inc., are, if anything, even bleaker; it has cumulative postpetition losses of
9  $698,100.18 and its general bank account is overdrawn $19,598.53. *Id.* at 225 and 229.
10 Debtors' monthly operating reports also reflect numerous charges for fees assessed for
11 charges for their checks returned for insufficient funds. *See, e.g., id.* at 79 and 105.
12 Counsel for the United States indicated that debtors have postpetition employment tax
13 delinquencies of approximately $60,000, though debtors have tendered another check for
14 approximately $30,000 to replace a check returned for insufficient funds. None of these
15 facts are disputed by Debtors. Based on this evidence, the court finds that the United
16 States Trustee has shown by a preponderance of the evidence substantial or continuing
17 loss to or diminution of the estates as described in 11 U.S.C. § 1112(b)(4)(A).
18     The United States Trustee further argues that this evidence as well as other
19 evidence shows that debtors are unable to reorganize internally, and thus, the absence of
20 a reasonable likelihood of rehabilitation. The United States Trustee points to the
21 Declaration of Gary Kading, president of K&Y Corona, Inc., the General Partner of
22 Corona-Cal Associates LP ("Landlord") describing the lack of confidence the landlord has
23 in debtors' current management, stating "By early 2015, I had begun to seriously doubt
24 Ms. Ferrer's ability or intentions to make good on her representations, and I was
25 becoming increasingly concerned about her ability to run the facility." ECF 157,
26 Declaration of Gary Kading ¶ 3. The deadline for debtors to assume the lease under 11
27 U.S.C. § 365 has been extended on a month to month basis to allow time for debtors to
28 reorganize, but now Mr. Kading states that Landlord will not agree to further extensions

after the expiration of the current extension on March 18, 2015, unless a trustee is appointed because Landlord lacks confidence in debtors' management. The landlord's position is significant because although debtors are current on their rent payments, debtors may lose their lease if the landlord does not agree to allow them to assume the lease, and cannot effectively reorganize without their business premises leased by the landlord. Debtors offer no specific details on how they may operate without the landlord's cooperation to extend the lease, and argue merely that they will deal with the situation outside of bankruptcy and that landlord's declaration should not be taken seriously.

The United States Trustee also points out the proof of claim the IRS filed in the Corona Care Convalescent Corporation case for prepetition taxes totaling $2.7 million, including $1.9 million in priority unsecured taxes. *See* Claim 1-4. Providing for payment of this claim is necessary for any reorganization under Chapter 11. 11 U.S.C. § 1129(a)(9)(C)(plan confirmation requires full payment of priority tax claims within 5 years of the date of the order for relief (i.e., petition date)). As the United States Trustee suggests, there is no reasonable likelihood of rehabilitation unless there are some means to pay the priority tax claims in a plan of reorganization as required by the Bankruptcy Code and no such means are offered or shown by debtors.

Based on the foregoing evidence, the court finds that the United States Trustee has shown by a preponderance of the evidence the absence of a reasonable likelihood of rehabilitation of debtors in these cases.[3] Accordingly, the court determines that the United States Trustee has made the requisite showing to establish cause to grant his motion under 11 U.S.C. § 1112(b)(1) to convert, dismiss or appoint a trustee. Thus, under 11 U.S.C. § 1112(b)(1), the court is to convert these cases to Chapter 7 or dismiss the cases, whichever is in the best interests of creditors and the estates, for cause

---

[3] The United States Trustee also argues that his motion under 11 U.S.C. § 1112(b)(1) may be granted on grounds of gross mismanagement of the bankruptcy estates. While gross mismanagement constitutes cause under 11 U.S.C. § 1112(b)(4)(B) to grant a motion under § 1112(b)(1), the court need not reach the claim of gross mismanagement since it grants the motion under an alternative ground under § 1112(b)(4)(A) as discussed herein.

6

unless it determines that the appointment of a trustee under § 1104(a) is in the best interests of creditors and the estate.  11 U.S.C. § 1112(b)(1).

As previously noted, the United States Trustee, the Creditors' Committee and other parties urge the court to grant the motions and appoint a Chapter 11 trustee for these cases under 11 U.S.C. § 1112(b)(1) and/or § 1104(a), which provides that on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee under one of two conditions:

1. for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . .; or

2. if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . . .

The parties seeking appointment of a Chapter 11 trustee under 11 U.S.C. § 1112(b)(1) and/or 1104(a) have the burden of proving appropriate grounds exist for such appointment by the preponderance of the evidence.  1 March, Ahart and Shapiro, *California Practice Guide – Bankruptcy* ¶ 4:2001 at 4-144 (2014), *citing In re William A. Smith Const. Co., Inc.*, 77 B.R. 124, 126 (Bankr. N.D. Ohio 1987) and *Grogan v. Garner*, 498 U.S. 279, 286-291 (1991).  Cause and best interest of creditors and other parties are separate and independent bases for granting a motion to appoint a trustee under 11 U.S.C. § 1104(a).  The United States Trustee argues that a trustee may be appointed here under 11 U.S.C. § 1112(b)(1) and 1104(a) on both grounds, for cause based on gross mismanagement and best interests of creditors.  The Creditors' Committee argues that a trustee may be appointed under 11 U.S.C. § 1104(a) based on the best interests of creditors.

As discussed herein, the court determines that it is in the best interest of creditors to appoint a Chapter 11 trustee in these cases under the circumstances as requested by the United States Trustee and the Creditors' Committee under 11 U.S.C. § 1112(b)(1) and therefore the court need not address the appointment of a trustee for cause under 11

U.S.C. § 1104(a) based on gross mismanagement, as argued by the United States Trustee.

The court notes that there is a slight difference in the statutory language between 11 U.S.C. § 1112(b) and § 1104(a) in that § 1112(b)(2) refers to whether appointment of a trustee under § 1104(a) "is in the best interests of creditors and the estate" whereas § 1104(a) has more expansive language referring to additional parties, that is, whether the appointment of a trustee "is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1112(b)(1) and § 1104(a); 7 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 1112.05[1] at 1112-4. Here, regarding the difference in language, *Collier on Bankruptcy* suggests that the factors are much the same between these statutes. *Id.* The court bases its ruling on the UST Motion based on the narrower language of 11 U.S.C. § 1112(b)(1), limiting the inquiry to the bests interests of creditors and the estate. Because the court should grant the UST Motion and appoint a trustee under § 1112(b), it need not rule upon the Committee Motion seeking the same relief of trustee appointment under § 1104(a).[4]

In determining which option is in the best interest of creditors, the court evaluates the prospects for collection and payment of the claims of creditors. As argued by the Creditors' Committee and the United States Trustee, a sale of the debtors' businesses offers some prospect of payment of creditors because the assets will be monetized for the payment of claims of creditors. This was reflected in the bargain reached by the parties as set forth stipulation approved by the court in its "Order Granting Motion Pursuant to Sections 305(A) and 1112(B) of the Bankruptcy Code for and Order

---

[4] Assuming arguendo that the court would rule on the Committee Motion, the court would likely determine that the factors to appoint a trustee would be much the same under § 1104(a) and that although the positions of the creditors and equity are divergent, the best interest of the creditors, equity and interested parties is to appoint a trustee to maximize value of the assets of the estate for these parties through an asset sale now that debtors and their insiders have had a reasonable opportunity to propose reasonable reorganization plans in these cases and have not succeeded.

Case 2:13-bk-28497-RK    Doc 170    Filed 03/06/15    Entered 03/06/15 15:39:12    Desc
Main Document    Page 9 of 14

Dismissing Chapter 11 Cases," entered in the jointly administered cases in the then lead bankruptcy case of Pasadena Adult Residential Care, Inc., on August 28, 2014.  2:13-bk-28484, ECF 382. That stipulation and order resolved the disputes between the parties to allow the debtors some time to reorganize by proposing and confirming reorganization plans by a certain deadline, and if the deadlines were not met, the assets would be sold to raise funds to pay creditors.  The parties to the settlement included debtors, their insiders, the Ferrers, the Creditors' Committee and HCF, a creditor with one of the largest claims.  2:13-bk-28484, ECF 380.  The settlement was negotiated with the assistance of another judge of this court acting as a mediator and was formally approved by this court; the approved settlement involved concessions by the settling parties, specifically providing for payment of claims of certain creditors in the Pasadena entity cases in certain fixed and limited amounts agreed to by the parties, dismissal of the Pasadena entity cases, deferral of payment of administrative expense claims of the estate professionals to the remaining cases of the Corona entities, and the commitment of the remaining debtors, the Corona entities, to propose and confirm reorganization plans by certain dates or to sell their assets to pay claims of creditors.  The settlement returned control of the more profitable Pasadena entities to the debtors' insiders, the Ferrers, based on the agreement of the parties to attempt to work out payment of creditors through reorganization of the less profitable Corona entities based on an agreed timetable.   Paragraph 7 of the settlement stipulation approved by the court provided that "failure to confirm a plan in the Corona estates consistent with the terms of the Settlement on or before February 28, 2015, shall result in the immediate employment by the Corona Debtors' estates of a broker for the purpose of selling the Corona facilities."  2:13-bk-28484, ECF 380.

      The settlement has been partially executed in that the cases of the Pasadena entities have been dismissed, some claim payments under the settlement have been made, and the debtors in the Corona entities have had time to devise, propose and confirm reorganization plans.  It is now evident that debtors are in default under the

1  agreement because they have not and cannot propose reorganization plans based on the
2  deadlines agreed to in the settlement.  Rather than complying with the default provisions
3  of the settlement, debtors and their insiders want to avoid the consequences of their
4  default and repudiate their settlement by supporting dismissal of the cases through the
5  motion of the United States Trustee to convert, dismiss or appoint trustee.  It is evident
6  that they are no longer willing to abide by the settlement, and are now arguing that it was
7  a "corrupt deal," even though they voluntarily and willingly negotiated and signed the
8  settlement with the advice and assistance of counsel, the settlement was reviewed by the
9  court and the order approving the settlement is now final and nonappealable.  However,
10 debtors and their insiders, the Ferrers, offer no meaningful alternative to the settlement to
11 pay creditors.  They say that they will restructure and pay creditors by continuing to
12 operate the businesses and by locating new financing or investors to provide the funds to
13 pay creditors and also argue that creditors have nonbankruptcy remedies to collect on
14 their claims.  Debtors argue that appointing a trustee is not in the best interest of creditors
15 because additional administrative expenses will be incurred and the prospects for
16 payment of creditors through an asset sale are uncertain.  They offer declarations of
17 representatives of some of the creditors expressing opposition to appointment of a
18 trustee and support for dismissal of the cases.
19         While there may be some merit to debtors' argument, the United States Trustee
20 and the Creditors' Committee make the better argument based on the record before the
21 court.  Debtors and their insiders, in seeking dismissal, essentially propose more of the
22 same. Based on the evidence before the court, this has not, and will not work.  As shown
23 by the evidence before the court, these debtors are continuing to rack up losses
24 postpetition, and their postpetition efforts to obtain new financing or investors have not
25 succeeded.  ECF 154 at 88, 92, 225, 229. The creditors, as represented by the Creditors'
26 Committee and HCF, negotiated in good faith a deal with debtors and their insiders to
27 give them some time to obtain new financing and investors to propose and confirm
28 reorganization plans, and debtors and their insiders were unable to do this as agreed.

While the parties did not agree to the appointment of a trustee as part of their settlement, they did agree to commit to an asset sales process by agreeing to the employment of a broker to sell the assets of the estates. Dismissing the cases now without enforcing the settlement or providing for meaningful payment of creditor claims is not in the best interests of creditors because this would undermine the settled expectations of interested parties, including creditors and vendors, such as debtors' landlord, which has granted extensions of debtors' right to assume or reject the lease under 11 U.S.C. § 365 based on the settlement. Without the landlord's cooperation, the court does not see how the value of the assets of debtors now in the bankruptcy estates can be preserved for any party because the nature of the debtors' business in operating convalescent care facilities for adult patients needs a physical facility, which is currently being leased because debtors apparently cannot afford to purchase their own facility. Debtors have no answer to the problem of not having the landlord's confidence and cooperation in their management, and debtors' statement that they will "deal" with these issues outside of bankruptcy does not show that it is in the best interest of creditors to expose the bankruptcy estates to the risk of loss of cooperation with the landlord and termination of the lease which is critical to maintenance of any value of the assets of the estates. Moreover, an asset sale most likely will result in monetizing the assets of the estates for payment of creditors. While debtors are correct in arguing that an asset sale may or may not result in full payment of claims, their alternative of continuing business as usual offers less prospect of recovery of value for payment of creditors. The evidence shows large operating losses by debtors, which continue postpetition as shown on the monthly operating reports, and hostility to current management by the landlord, which probably foreshadows difficulties with lease extension and uncertain viability of debtors' businesses. ECF 154 at 88, 92, 225, 229, and ECF 157. Understandably, debtors and their insiders want to continue their efforts to operate the businesses and recover value for themselves since they probably think an asset sale will leave equity holders with nothing, but as shown by their record, they are continuing to rack up losses without

meaningful progress in paying down debt. Thus, it appears that the appointment of a trustee to conduct an asset sale process is in the best interest of creditors because debtors and their insiders are not inclined to sell the assets, as indicated by their support of dismissal of the cases. An asset sale at least offers some prospect of recovery of value of the estates to pay creditors. The fact that an asset sale process may be conducted does not necessarily mean that there are no protections for the interested parties, because any sale would have to be reviewed under the standards of the Bankruptcy Code, whether through a plan under 11 U.S.C. § 1129 or a non-plan sale under 11 U.S.C. § 363. Moreover, it would undermine the policy of enforcement of settlements to dismiss the cases and allow the debtors and their insiders to escape the consequences of their default on the settlement.

In terms of patient safety, the court is persuaded that, at the very least, appointment of a Chapter 11 trustee will not harm the patients. The court takes note of the declaration of Patient Care Ombudsman Joseph Rodrigues, which stated the Ombudsman's support of the appointment of a Chapter 11 trustee. ECF 158. Although the Ombudsman's declaration did not explain or give much reason for his support, the court determines that, in the discharge of the duties of his office, the Ombudsman would not support the appointment of a trustee if doing so would endanger patient safety. The court discounts the self-serving declarations of AJ Rana and Felicidad Ferrer (ECF 163), as insiders and equity holders of the debtors, and determines that a Chapter 11 trustee chosen by the United States Trustee should be reasonably able to manage the facilities without the services of the Ferrers and vendors of therapist services such as represented by AJ Rana for the brief and limited period of time necessary to conduct and complete an asset sale process.

The Creditors' Committee also argued that it is not in the best interests of creditors to dismiss the cases because this would restore the parties to the prepetition "race to the courthouse" to collect on claims and seeks appointment of a Chapter 11 trustee for an orderly liquidation of assets and payment of claims. The court agrees that the evidence

supports this argument because debtors were given the opportunity in the bankruptcy process through the automatic stay to see what they could do to restructure and reorganize before creditors took action outside of bankruptcy. Debtors, their insiders, and their creditors reached a bargain in the settlement to allow this to happen, but unfortunately debtors were not able to succeed. Now that they have failed in their restructuring efforts in the bankruptcy cases, it would be in the best interest of creditors to go forward with an asset sale process based on the settlement of the parties rather than returning the creditors to the prepetition status quo where they have to fend for themselves after being delayed for over 19 months in these bankruptcy cases,

The Creditors' Committee also pointed out that appointment of a Chapter 11 Trustee may make available to creditors other sources of potential recovery of value for creditors if the bankruptcy cases continue. Specifically, Committee pointed to the existence of a potential malpractice claim against debtors' previous attorneys in a state court action brought by creditor HCF Insurance Agency ("HCF") in which HCF was awarded almost $4 million, jointly and severally, against debtors based on an original claim which was much less. *See Claim 5-2*. This potential malpractice claim was listed as an asset on debtors' bankruptcy schedules, but never pursued. ECF 154 at 10, Schedule B. A Chapter 11 trustee may attempt to enforce this potential claim where debtors' current management has not so far, and this is further evidence that appointment of a Chapter 11 trustee is in the best interest of creditors to pursue such claim to recover value for creditors.

For the foregoing reasons, the court finds that the United States Trustee has met his burden of proving cause by a preponderance of the evidence to grant his motion to convert, dismiss or appoint a trustee under 11 U.S.C. § 1112(b)(1) and determines that it is in the best interest of creditors and the estate to appoint a trustee under 11 U.S.C. §§ 1112(b)(1) based on the preponderance of the evidence and that the motion of the United States Trustee for trustee appointment under should be granted. For the reasons stated herein, the court determines that pursuant to 11 U.S.C. §1112(b)(1) trustee appointment

1 is in the best interest of creditors and the estate over the alternatives of dismissal or
2 conversion to Chapter 7. Regarding conversion, no party seeks that alternative, and the
3 court does not view that conversion would be more advantageous than appointment of a
4 Chapter 11 trustee to operate the businesses of the debtors for a short period of time and
5 to conduct and complete an asset sales process. Because the court should grant the
6 UST Motion and appoint a trustee under 11 U.S.C. § 1112(b)(1), it need not formally rule
7 on the merits of the Committee Motion to appoint a trustee under 11 U.S.C. § 1104(a),
8 which will be denied without prejudice as moot.
9    Final orders granting the UST Motion and appointing a Chapter 11 trustee in these
10 cases will be separately entered.
11    **IT IS SO ORDERED**.
12                                            ###

Date: March 6, 2015

_____
Robert Kwan
United States Bankruptcy Judge